Jennifer J. Axel (023883)
jaxel@polsinelli.com
**POLSINELLI** *PC*
One East Washington, Suite 1200
Phoenix, AZ 85004
T: 602.650.2000
F: 602.264.7033

Colby B. Springer (*pro hac vice* pending)
cspringer@polsinelli.com
Miya Yusa (*pro hac vice* pending)
myusa@polsinelli.com
**POLSINELLI** *LLP*
3 Embarcadero Center, Suite 2400
San Francisco, CA  94111
T: 415.248.2100
F: 415.248.2101

**ATTORNEYS FOR PLAINTIFF**
**THE MEADOWS OF WICKENBURG INC.**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Meadows of Wickenburg, Inc., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Universal Health Services, Inc., a Delaware corporation; UHS of Delaware, Inc., a Delaware corporation; UHS of Pennsylvania, Inc., a Pennsylvania corporation d/b/a/ The Meadows Psychiatric Center.<br><br>Defendants | Case No.<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, AND UNFAIR COMPETITION** |

Plaintiff The Meadows of Wickenburg, Inc., for its Complaint against Defendants Universal Health Services, Inc., UHS of Delaware, Inc., and UHS of Pennsylvania, Inc. d/b/a the Meadows Psychiatric Center alleges as follows:

**PARTIES**

1.     Plaintiff The Meadows of Wickenburg, Inc. ("Plaintiff" or "The Meadows") is a Delaware corporation with its principal place of business located at 1655 N. Tegner Street, Wickenburg, Arizona 85390.  The Meadows is but one member of the Meadows Behavioral Healthcare Network.  The Meadows Behavioral Healthcare Network is a network of specialized treatment programs including residential and outpatient treatment for behavioral health conditions and co-occurring disorders.

2.     Defendant Universal Health Services, Inc. ("UHS") is a Delaware corporation with its principal place of business at 367 South Gulph Road, King of Prussia, Pennsylvania 19406.  UHS operates *inter alia* 328 behavioral health facilities throughout the United States, including the State of Arizona.  UHS promotes itself as the "largest facility-based behavioral health provider in the country."  UHS' March 21, 2019 Investor Presentation (attached hereto as **Exhibit A**) reflects at least four such facilities operating in the State of Arizona.  Three of said facilities operate in Phoenix: the fourth in Tucson.



3.     UHS of Delaware, Inc. ("UHS Delaware") is a Delaware corporation with its principal place of business at 367 South Gulph Road, King of Prussia, Pennsylvania 19406.  UHS Delaware is the management company for UHS.  UHS Delaware is a wholly-owned

subsidiary of UHS.  UHS operates through its subsidiaries including UHS of Delaware.  All healthcare and management operations—by UHS' own and continuing public admissions—are conducted through subsidiaries of UHS including UHS Delaware.

4.     Defendant UHS of Pennsylvania, Inc. ("UHS PA") is a Pennsylvania corporation with its principal place of business at 367 South Gulph Road, King of Prussia, Pennsylvania 19406.  According to the Pennsylvania Department of State, the Secretary for UHS PA is George Brunner who maintains an address at 367 South Gulph Road, King of Prussia, Pennsylvania 19406.  According to the Pennsylvania Department of State, the Treasurer and Vice President of UHS PA is Steven Filton who maintains an address at 367 South Gulph Road, King of Prussia, Pennsylvania 19406.  The principal place of business for UHS PA is also the address for the principal place of business of UHS Delaware and UHS.  A copy of the officer listing of for UHS PA as reflected by the Pennsylvania Department of State on April 3, 2020 is attached hereto as **Exhibit B**.

5.     George Brunner is—according to publically available information—the Deputy General Counsel for UHS.  According to the Pennsylvania Disciplinary Board of the Supreme Court of Pennsylvania, George Brunner is also affiliated with UHS Delaware.  Steve Filton is—according to publically available information—the executive vice president and (since 2003) chief financial officer for UHS.  A screen capture of UHS' corporate officers as of April 3, 2020 is reproduced below.

## Corporate Officers

Meet the team driving our vision.

**Alan B. Miller**
Chairman of the Board and Chief Executive Officer

**Marc D. Miller**
President

**Steve G. Filton**
Executive Vice President and Chief Financial Officer

**Marvin G. Pember**
Executive Vice President and President Acute Care Division

**Matt Peterson**
Executive Vice President and President Behavioral Health Division

**Charles F. Boyle**
Senior Vice President and Controller

**Geraldine Johnson Geckle**
Senior Vice President, Human Resources

**Matthew D. Klein**
Senior Vice President and General Counsel

**Michael S. Nelson**
Senior Vice President, Strategic Services

**Victor J. Radina**
Senior Vice President, Corporate Development

**Cheryl K. Ramagano**
Senior Vice President and Treasurer

6. UHS PA has—at various points in time relevant to this action—shared other officers in common with UHS. This includes but is not necessarily limited to the President of UHA PA. The President of UHS PA was until recently (January 31, 2019) also the president of the behavioral health division of UHS.

7. According to the National Provider Identifier (NPI) Registry, UHS PA maintains an NPI number of 1124091715. This NPI number is also affiliated with The Meadows Psychiatric Center. The Meadows Psychiatric Center maintains a treatment facility at 132 The Meadows Drive, Centre Hall, Pennsylvania 16828. Healthcare providers acquire a unique 10-digit NPI to identify themselves in a standard way throughout the healthcare industry. On information and belief, UHS PA is the legal operating entity for the business alias or 'DBA' otherwise known as The Meadows Psychiatric Center ("MPC").

8. UHS maintains on its website—as of April 3, 2020—a page dedicated to career opportunities for The Meadows Psychiatric Center. Said page bears (as of April 3, 2020) a URL of: https://jobs.uhsinc.com/the-meadows-psychiatric-center. This page states "[t]he Meadows Psychiatric Center is owned and operated by a subsidiary of Universal Health Services, Inc. (UHS), a King of Prussia, PA-based company." This page also states that "UHS of Delaware, Inc." is "a wholly-owned subsidiary of Universal Health Services." This page also states that UHS "is a holding company and operates through its subsidiaries

1   including its management company, UHS of Delaware, Inc." and that "[a]ll healthcare and

2   management operations are conducted by subsidiaries of Universal Health Services, Inc."

3   This page indicates that any reference to UHS, a UHS facility, or the company and

4   otherwise involving UHS' "healthcare or management operations . . . is referring to

5   Universal Health Services' subsidiaries including UHS of Delaware."  A screen capture of

6   the foregoing (as of April 3, 2020) is reproduced below:

7
8   The Meadows Psychiatric Center is owned and operated by a subsidiary of Universal Health Services, Inc. (UHS), a King of Prussia, PA-based company, that is one of the largest healthcare management companies in the nation.

9   UHS is a registered trademark of UHS of Delaware, Inc., the management company for Universal Health Services, Inc. and a wholly-owned subsidiary of Universal Health Services. Universal Health Services, Inc. is a holding company and
10  operates through its subsidiaries including its management company, UHS of Delaware, Inc. All healthcare and management operations are conducted by subsidiaries of Universal Health Services, Inc. To the extent any reference to "UHS"
11  or "UHS facilities" on this website including any statements, articles or other publications contained herein relates to our healthcare or management operations it is referring to Universal Health Services' subsidiaries including UHS of
12  Delaware. Further, the terms "we," "us," "our" or "the company" in such context similarly refer to the operations of Universal Health Services' subsidiaries including UHS of Delaware. Any employment referenced in this website is not with
    Universal Health Services, Inc. but solely with one of its subsidiaries including UHS of Delaware, Inc.

13          9.      With the foregoing in mind, and at all times relevant to this complaint, UHS,

14  UHS Delaware, and UHS PA are believed to have shared a unity of interest and ownership

15  such that any distinction between the foregoing is non-existent and that one or more of

16  these entities was merely an instrumentality of the others.  For example, UHS openly states

17  that it is but a holding company and that its wholly-owned subsidiary—UHS Delaware—

18  oversees all healthcare and management operations.  UHS also openly states that any

19  reference to UHS and concerning healthcare and management of those operations should be

20  construed as encompassing UHS Delaware and UHS' other subsidiaries.  UHS, through

21  UHS Delaware, is believed to have dictated every facet of its subsidiaries' business—

22  including but not limited to UHS PA—as both a matter of policy decisions as well as day-

23  to-day operation.

24          10.     UHS, UHS Delaware, and UHS PA—and each of them—are believed to have

25  been aware of, authorized, ratified, acted in concert, and to have otherwise sought to benefit

26  from all of the acts complained of herein, especially as they pertain to MPC, which is the

27  DBA of UHS PA.  By way of a singular example, UHS Delaware did on or about January

28  23, 2020 file an application for a trademark THE MEADOWS PSYCHIATRIC CENTER.

A copy of said filing and related interactions with the United States Trademark Office is attached hereto as **Exhibit C**.

11.     Despite said mark correlating to services offered by MPC, which is the DBA of UHS PA, the applicant for said mark is UHS Delaware.  Said application was filed by Charles Smouse.  According to certain publically available information, Charles Smouse is the Associate General Counsel for UHS.  But according to the Pennsylvania Disciplinary Board of the Supreme Court of Pennsylvania, Charles Smouse is also affiliated with UHS Delaware.  Charles Smouse's contact information is the same for both UHS and UHS Delaware, but bears an email address affiliated with UHS (uhsinc.com).

12.     UHS, UHS Delaware, and UHS PA are each referred to as a Defendant and collectively referred to as the Defendants.  Reference to MPC specifically concerns the DBA of UHS PA and therefore the specific acts of UHA PA.  Any such reference nevertheless invokes the acts (and ultimately the liability) of UHS Delaware and UHS in that UHA PA performs services that are sufficiently important to UHS Delaware and UHS that if UHS PA did not undertake such actions, UHS Delaware and UHS would not have a representative to perform the same.

## JURISDICTION AND VENUE

13.     This is a civil action for the infringement of registered federal trademarks pursuant to 15 U.S.C. § 1114 of the Lanham Act, false designation of origin/false advertising/unfair competition pursuant to 15 U.S.C. § 1125(a)(1), trademark dilution pursuant to 15 U.S.C. § 1125(c), and related Arizona state and common law claims for trademark infringement and unfair competition, including those brought pursuant to Section 44-1451 of the Arizona Revised Statutes.  This Court has original jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).  This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367(a).

14.     This Court has personal jurisdiction over the Defendants because Defendants maintain activities in the forum that are substantial, continuous, and systematic.  Defendants maintain four behavioral health facilities within the State of Arizona.  These facilities

include Quail Run Behavioral Health, Calvary Center, and Valley Hospital in Phoenix and Palo Verde Behavioral Health in Tucson as shown (below) on the UHS website as of April 3, 2020.





15.     UHS has repeatedly declared that it is a holding company for UHS Delaware and its other operating subsidiaries and that UHS Delaware oversees all healthcare and management operations.  UHS has further and repeatedly stated that any reference to UHS concerning healthcare and management of those healthcare operations is inclusive of UHS Delaware and UHS' other subsidiaries.  Defendants have therefore (and by their own

admission) maintained and continue to maintain a substantial, continuous, and systematic presence within the District of Arizona as it pertains to the foregoing behavioral health facilities.

16.     This Court also has personal jurisdiction over the Defendants because Defendants have committed intentional acts of trademark infringement in this district. Defendants—with both knowledge of the Plaintiff and Plaintiff's marks and goodwill— adopted a name and mark that is confusing similar to (if not a slavish copy of) the Plaintiff's marks.  Defendants also undertook said adoption in such a way that caused Defendants to fundamentally change their name and mark as it had existed prior to said adoption.  Said adoption was an unquestionable effort to usurp the goodwill associated with the name, brand, and trademarks of the Plaintiff.

17.     Said adoption was made despite previous representations from Defendants that their name and mark was (at that prior time) in no way confusing relative to that of Plaintiff.  Defendants made said representations in an effort to lull Plaintiff into a false sense of security despite having intentions to the contrary.  Because the Defendants knowingly and intentionally directed their tortious activities towards The Meadows—the Plaintiff and an Arizona resident—Defendants cannot allege that their contacts with the jurisdiction are random, fortuitous, or attenuated.[1]

18.     Venue is proper under 28 U.S.C. § 1391(b)(2) because Defendants conduct business activities within this District.  Venue is also proper under the foregoing statute because a substantial part of the events giving rise to the causes of action (trademark infringement and the harm therefrom) occurred in this District.  Moreover, the Defendants are subject to the personal jurisdiction of the District and with respect to such action. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(3).

---

[1] In the event that Defendants seek to dismiss or transfer the action on the basis of jurisdiction, Plaintiff will request limited discovery as to Defendants' infringing activities that are directed toward residents of the District and corporate structure, agents, and alter ego that are present in and purposely availing themselves of the benefits of the District.

## FACTS RELEVANT TO ALL COUNTS

### The Meadows Marks and Associated Goodwill

19.     The Meadows is a world-renowned private treatment center located on 14 acres of desert campus adjacent to the beautiful mountains of Central Arizona.  The Meadows is dedicated to healing childhood and relational trauma, addiction issues, and mental health disorders.  The Meadows has helped thousands of individuals and families overcome and recover from devastating addiction and behavioral health disorders during its more than 40 years of operations in Wickenburg, Arizona.  The Meadows has both a national and international reputation for clinical excellence.  This reputation is in no small part a result of the efforts of its dedicated team of health care professionals.

20.     The Meadows provides addiction and behavioral health treatment in accordance with the highest standards in its field.  This treatment includes use of the clinically comprehensive 'The Meadows Model,' which was developed with the assistance of The Meadows' distinguished and world-class Senior Fellows.  The Meadows Senior Fellows are recognized and published experts in the addiction treatment field.  The Meadows Senior Fellows include recognized thought leaders in the treatment of trauma, drug and alcohol addiction, sex addiction, panic and anxiety disorders, post-traumatic stress disorder, codependency, depression, bipolar disorder, and eating disorders.

21.     The Meadows Model is at the core of all Meadows Behavioral Healthcare treatment programs, including The Meadows in Wickenburg, Arizona.  The Meadows Model is incorporated into every facet of each Meadows Behavioral Healthcare treatment program.  This includes week-long workshops, inpatient treatment, and intensive outpatient options.  The Meadows Model is an innovative therapeutic technique for the identification and treatment of underlying trauma of addictive and dysfunctional processes.  As a result, Plaintiff's name—"The Meadows"—is famous in the psychiatric, behavioral, and mental health industries and carries with it substantial goodwill.

22.     Plaintiff—as part of an effort to identify and distinguish its goodwill and services from other behavioral and mental health care providers—has applied for, been

granted, and now owns and protects an equally famous portfolio of trademark registrations. Plaintiff acquired said intellectual property through great effort, expense, and time.  These efforts are in addition to the ongoing efforts taken by The Meadows and its affiliated facilities in offering the aforementioned world class and widely recognized behavioral health treatment services.  These trademark registrations include:

a.     "THE MEADOWS" (Registration No. 2,013,513), filed September 26, 1995 for "Mental health and substance abuse treatment center services" in International Class 042;

b.     **MEADOWS** (Registration No. 4,205,651), filed February 6, 2012 for "Mental health and substance abuse treatment center services" in International Class 044;

c.     "MEADOWS BEHAVIORAL HEALTHCARE" (Registration No. 4,682,925), filed April 17, 2014 for "Mental health services; behavioral health services; addiction treatment services; substance abuse treatment services; mental health, behavioral health, addiction, and substance abuse treatment center services" in International Class 044, and

d.     **MEADOWS** Behavioral Healthcare (Registration No. 4,682,932), filed April 22, 2014 for "Mental health services; behavioral health services; addiction treatment services; substance abuse treatment services; mental health, behavioral health, addiction, and substance abuse treatment center services" in International Class 044.

23.     Since at least January 1, 1977, The Meadows has been engaged in providing mental and behavioral health and substance abuse treatment center services, which have since become distinctly identified by its aforementioned registered trademarks as well as state and common law rights.  In particular, since at least November 5, 1996, The Meadows has exclusively used, owned, and maintained the trademark and trade name "THE

MEADOWS" in the field of mental and behavioral health and substance abuse treatment center services, in and throughout the United States.

24.    "THE MEADOWS" is the subject of U.S. Trademark Registration Number 2,013,513, having a Registration Date of November 5, 1996 and a Date of First Use at least as early as January 1, 1977.  The Meadows is the sole owner of all right, title, and interest in and to "THE MEADOWS" trademark.  A true and correct copy of Trademark Registration Number 2,013,513 for the mark "THE MEADOWS" is attached hereto as **Exhibit D.**

25.     is the subject of U.S. Trademark Registration Number 4,205,651, having a Registration Date of September 11, 2012 and a Date of First Use at least as early as March 19, 2012.  The Meadows is the sole owner of all right, title, and interest in and to the  trademark.  A true and correct copy of Trademark Registration Number 4,205,651 for the mark  is attached hereto as **Exhibit E.**

26.    "MEADOWS BEHAVIORAL HEALTHCARE" is the subject of U.S. Trademark Registration Number 4,682,925, having a Registration Date of February 3, 2015 and a Date of Frist Use at least as early as May 13, 2014. The Meadows is the sole owner of all right, title, and interest in and to the "MEADOWS BEHAVIORAL HEALTHCARE" trademark.  A true and correct copy of the Trademark Registration Number 4,682,925 is attached hereto as **Exhibit F**.

27.     is the subject of U.S. Trademark Registration Number 4,682,932, having a Registration Date of February 3, 2015 and a Date of First Use at least

as early as May 13, 2014. The Meadows is the sole owner of all right, title, and interest in

and to the **MEADOWS** Behavioral Healthcare trademark. A true and correct copy of the Trademark

Registration Number 4,682,932 is attached hereto as **Exhibit G**.

28.    "THE MEADOWS," THE MEADOWS, "MEADOWS BEHAVIORAL

HEALTH," and **MEADOWS** Behavioral Healthcare (collectively "The Meadows Marks") are extraordinarily

famous marks in the mental health, behavioral health, and substance abuse treatment center

services fields.  The Meadows Marks have become synonymous with Plaintiff The

Meadows as a result of the quality of its offerings in the mental health, behavioral health,

and substance abuse treatment center services fields.  The Meadows Marks likewise enjoy

fame because of efforts exerted by The Meadows at increasing the awareness of its brand

and related services.  The Meadows Marks have thus come to exclusively serve to designate

Plaintiff's services in the aforementioned mental health, behavioral health, and substance

abuse treatment center services fields.

29.    Since adopting The Meadows Trademarks, Plaintiff has continuously

promoted and used its registered and common law trademark rights in interstate commerce

throughout the United States.  Plaintiff's services, which are offered at its world renowed

and famous facility known for its high quality of treatment, are advertised, marketed, and

promoted in conjunction with The Meadows Trademarks through (at the least) Plaintiff's

website—www.themeadows.com—or other affilaited sites since at least March 21, 2005.

In addition to appearing on Plaintiff's website, The Meadows Trademarks are used

extensively in advertising and marketing materials for the Plaintiff, on psychological and

behavioral health service websites, facility review websites, and via Internet advertising, social media, and other advertising mediums.  Plaintiff has spent substantial sums advertising The Meadows Trademarks, and continues to spend considerable amounts of money annually on such advertisements and brand recognition.

30.     Moreover, "THE MEADOWS" trademark has become incontestable pursuant to Section 15 of the Lanham Act, codified at 15 U.S.C. § 1065.  Incontestability serves as conclusive evidence of The Meadows' ownership of this mark.  Incontestability further serves as conclusive evidence of The Meadows' exclusive right to use this mark in commerce on or in connection with the services identified in the registration (mental health and substance abuse treatment center services ) as provided by Section 33(b) of the Lanham Act, codified as 15 U.S.C. § 1115(b).



31.     Further, the  trademark has become incontestable pursuant to Section 15 of the Lanham Act, codified at 15 U.S.C. § 1065.  Incontestability serves as conclusive evidence of The Meadows' ownership of this mark.  Incontestability further serves as conclusive evidence of The Meadows' exclusive right to use this mark in commerce on or in connection with all of the services identified in the registration (mental health and substance abuse treatment center services) as provided by Section 33(b) of the Lanham Act, codified as 15 U.S.C. § 1115(b).

32.     Because of The Meadows' exclusive and extensive use of The Meadows Trademarks, these marks, individually and collectively, have acquired enormous value. The Meadows Marks have become extremely well-known to the consuming public and industry.  The Meadows Marks exclusively and uniquely identify The Meadows as the source of services under each of The Meadows' Trademarks.

33.     The Meadows Trademarks are vital to The Meadows' business and livelihood.  The Meadows Trademarks not only represent The Meadows' services, but The

13

Meadows' reputation and standard of quality.  To preserve its business reputation, consumer goodwill, and to protect the value of its trademarks, The Meadows maintains strict standards in the delivery of its services.  These standards include adherence to licensure by Arizona Department of Health Services and accreditation by The Joint Commission.

34.     The Meadows likewise actively polices and enforces its intellectual property rights.  The Meadows will undoubtedly suffer significant harm if unlicensed third parties, including the Defendants herein, are allowed to trade off The Meadows' reputation and goodwill.  Such harm would occur as a result of such parties—like the Defendants—siphoning off The Meadows' customers with nearly identical and confusingly similar trademarks and websites for provisioning similar services to a similar consumer audience.

## Defendants' Wrongful and Infringing Conduct

35.     Plaintiff is informed, believes, and thereupon alleges that Defendants UHS, UHS Delaware, and UHS PA are intentionally, willfully, and concertedly engaged in conduct meant to confuse the relevant consuming public with respect to mental health, behavioral health, and substance abuse treatment center services.  This conduct includes but is not limited to Defendants:

(i) using a confusingly similar domain name (www.the meadows.net) to Plaintiff's own domain (www.themeadows.com) and registered trademarks,

(ii) intentionally filing a trademark application with an all but identical and confusingly similar mark and logo,

(iii) modifying its branding, appearance, and presentation of its website to mirror that of the Plaintiff, and

(iv) having engaged in online advertising techniques that usurp traffic from Plaintiff. Each of the foregoing is part of a collective effort to benefit from The Meadows' reputation and goodwill.  Defendants engaged in the aforementioned conduct in violation of The Meadows' exclusive rights in one or more of its trademarks well after The Meadows began using its trademarks, obtained its registration as alleged above, after these marks and the

14

name became famous, and/or after Defendants became aware of one or more of Plaintiff's rights in The Meadows Marks.

36.    Defendants are direct competitors with The Meadows.  Defendants are promoting the same services within the mental and behavioral health industry.  Defendants do not currently have, nor have they ever had, a contractual relationship with The Meadows authorizing the use of services covered by The Meadows ownership of the trademarks under a confusingly similar trademark.  Defendants have not received any other indication of permission or authorization from Plaintiff to engage in any of the conduct complained of herein.

37.    Defendants have knowledge of, were, are, and remain fully aware of Plaintiff's ownership and exclusive rights in its trademarks.  Defendants have knowledge of, were, are, and remain fully aware of the fame in such marks.  Defendants are believed and in some instances known to have had such knowledge prior to the actions complained of herein.  Defendants therefore adopted and used nearly identical and confusingly similar marks in bad faith.  Defendants therefore adopted and used nearly identical and confusingly similar marks with the intent to cause confusion as to the source of the services.  Defendants therefore adopted and used nearly identical and confusingly similar marks to dilute the value of said marks with respect to The Meadows' services and goodwill associated therewith.

38.    Defendants are deemed to have constructive notice of The Meadows' rights in The Meadows Trademarks by virtue of the federal registrations for such marks.  Defendants are deemed to have constructive notice of The Meadows' rights in The Meadows Trademarks by virtue of the Meadows' use of the ® registration notice in conjunction with its services.  Constructive notice notwithstanding, Plaintiff sent UHS Delaware and UHS PA dba MPC a cease and desist letter on or about October 25, 2017.  Said letter advised as to potential infringement of certain of The Meadows' trademarks.  A true and correct copy of that letter is attached hereto as **EXHIBIT H**.

39.     On November 3, 2017, counsel for United Health Services, Inc. responded to the cease and desist letter.  In that letter, counsel indicated that they "represent Universal Health Services, Inc. and its affiliate, The Meadows – Universal Community Behavioral Health" in intellectual property matters.  A true and correct copy of this letter is attached hereto as **EXHIBIT I**.

40.     On November 10, 2017, counsel for United Health Services, Inc. and The Meadows – Universal Community Behavioral Health further responded to the cease and desist letter.  A true and correct copy of that letter is attached hereto as **EXHIBIT J**.  In said correspondence, UHS and UHS PA indicated that in light of the current scope of the service offerings of the respective parties that there was no likelihood of confusion amongst the parties' respective customers.

41.     Relying on these representations, the fact that the MPC website had theretofore been marketing its services in a manner vastly different than that of the Plaintiff (as shown in the below screenshot of MPC's website from July 2017), and a good faith belief that the Defendants would maintain their operations in such a way as to avoid any potential confusion in the future, Plaintiff took no further action.

A Peaceful Place to Grow and Get Well

The Meadows is a behavioral health treatment facility located in Central Pennsylvania and is the core of an integrated delivery system for the treatment of mental illness.

The Meadows, a 107-bed private behavioral health care facility on a spacious 52-acre rural campus, is located minutes outside State College in Central Pennsylvania. As an integrated behavioral health care delivery system, The Meadows provides comprehensive mental and behavioral health treatment services to **children, adolescents, adults** and older adults. Each unit on campus provides specialized care programs for every age group. Offering a wide referral network of providers throughout Central Pennsylvania, The Meadows represents a regional specialty system structured to meet the continuum of care demanded by patients, professionals and payers.

**TREATMENT PHILOSOPHY: We believe that moderate to severe mental health disorders of children, adolescents, and adults result from the interaction of biological, psychological and social factors. Treatment is individualized, person-centered and recovery oriented.**

2014 Top Performer on Key Quality Measures® Hospitals



The Joint Commission's
Top Performer on
Key Quality Measures®
2014

Defendants took advantage of that good faith belief by the Plaintiff.  Defendants elected—

after its correspondence and with full knowledge of the Plaintiff and its trademark rights—

to intentionally engage in the aforementioned conduct that misappropriates the value of

Plaintiff's marks and intellectual property rights

42.     For example, on January 23, 2020, Defendants filed United States Trademark

Application No. 88/770,327  for "Hospital services; Medical

services; Psychiatric services" in Class 44.  Defendants' applied-for mark

 looks almost identical to Plaintiff's registered trademark for

MEADOWS.  Defendants made this filing after receiving the aforementioned cease and

desist letter and with full knowledge of Plaintiff and its trademarks.  Defendants not only

sought to procure confusing similar trademark production, but began to use an infringing

and confusing similar entity name and mark in conjunction with an identical domain name

as that of the Plaintiff.

43.     Defendants significantly modified their website to incorporate the mark

disclosed in the aforementioned filing and to wantonly infringe upon The Meadows

Trademarks.  The changes in the website of Defendants clearly evidence their attempt to

create a brand and service that is confusing similar with that of the Plaintiff.  Exemplary

screen shots of Defendants' new MPC website (**EXHIBIT K**) as compared to Plaintiff's

website (**EXHIBIT L**) are attached hereto.  As can be readily seen, Defendants have not only

adopted a confusingly similar mark compared to that of the Plaintiff and The Meadows

1  Trademarks, but a contextual presentation of a peaceful, serene, and curative environment

2  like that long used by the Plaintiff.  Said presentation by Defendants is quite distinct from

3  that previously shown above in July 2017.

4        44.    Plaintiff is informed and believes and thereon alleges that Defendants have

5  also begun using Internet advertising in a prohibited manner that causes confusion with

6  Plaintiff and its marks.  As shown below, entering terms clearly associated with the Plaintiff

7  and its marks—'the meadows behavioral health treatment facility'—causes the website of

8  MPC and the Defendants to appear first in the Google Search Engine Results and ahead of

9  those of the Plaintiff.  Said terms also cause the Defendants' MPC facility information bar

10  to appear—and not that of the Plaintiff.

11

12  

13

14

15

16

17

18

19

20

21

22

23        45.    Consequently, Plaintiff files this action seeking, inter alia, injunctive relief, an

24  accounting and award of Defendants' profits flowing from their infringing activities, pre-

25  judgement interest, attorneys' fees and costs of suit incurred herein, and any other relief that

26  this honorable Court deems just and proper.

27

28

18

## COUNT ONE

## FEDERAL TRADEMARK INFRINGEMENT

## (15 U.S.C. § 1114)

46.     The Meadows re-alleges and incorporates by references the allegations in the preceding paragraphs as if fully set forth herein.

47.     Defendants' unauthorized use of "THE MEADOWS" name and corresponding mountain logo, which is confusingly similar to The Meadows' Marks protected by the trademark registrations attached hereto, is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' services are offered by The Meadows or are otherwise associated or connected with The Meadows.

48.     Customers are likely to be misled into believing that Defendants are providing services that are provided by or otherwise associated with The Meadows, or that Defendants' are part of The Meadows' services.

49.     As such, Plaintiff is informed, believes, and thereupon alleges that Defendants intentionally, knowingly, and in bad faith, used an imitation of The Meadows Marks with full knowledge of the goodwill and reputation associated with The Meadows Marks and with full knowledge that Defendants had and have no right, license, or authority to use The Meadows Marks or any other mark confusingly similar thereto.

50.     The Meadows is the sole owner of all right, title, and interest in and to The Meadows Marks and therefore has standing to initiate and maintain an action for trademark infringement pursuant to 15 U.S.C. § 1114(1)(a).

51.     Defendants aforementioned action constitutes willful and intentional infringement of The Meadows' rights in The Meadows Marks in violation of 15 U.S.C. § 1114.

52.     As a result of Defendants' infringement, The Meadows has suffered and will continue to suffer substantial damages, and Defendants have caused and will continue to cause The Meadows to suffer irreparable harm for which there is no adequate remedy at law.

19

53.     Defendants had either actual notice or constructive notice of The Meadows Marks pursuant to 15 U.S.C. § 1072 prior to their adoption, use, and sale of the infringing services.

54.     The similarity in the overall commercial impression between The Meadows Marks and the Defendants' adopted branding and mark is unmistakable.

55.     The services offered by Defendants are covered by The Meadows Marks and are advertised to the same consumers in the same channels of trade.

56.     Defendants actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with The Meadows Marks, thus entitling The Meadows to injunctive relief and to recover Defendants profits, actual damages, enhanced profits and damages, costs, and attorneys' fees pursuant to 15 U.S.C §§ 1114, 1116, and 1117.

<div align="center">

**COUNT TWO**

**FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**

**(15 U.S.C. § 1125(a))**

</div>

57.     The Meadows re-alleges and incorporates by references the allegations in the proceeding paragraphs as if fully set forth herein.

58.     Defendants unauthorized use of "THE MEADOWS" name and corresponding mountain logo falsely suggest that its services are connected with, sponsored by, affiliated with, or related to The Meadows and constitutes unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

59.     Due to the unfair nature of Defendants' actions, Defendant has caused, and unless enjoined by this Court, will continue to cause, serious and irreparable injury and damage to The Meadows, for which the Meadows has no adequate remedy at law.

60.     Defendants had either actual notice or constructive notice of The Meadows Marks pursuant to 15 U.S.C. § 1072 prior to their adoption, use, and sale of the infringing services.

61.     Defendants actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with The Meadows Marks, thus entitling The Meadows to

injectory... 

1 injunctive relief and to recover Defendants profits, actual damages, enhanced profits and

2 damages, costs, and attorneys' fees pursuant to 15 U.S.C §§ 1114, 1116, and 1117.

### COUNT THREE

### TRADEMARK DILUTION

### (15 U.S.C. § 1125(c))

6     62.    The Meadows re-alleges and incorporates by references the allegations in the

7 proceeding paragraphs as if fully set forth herein.

8     63.    The Meadows is the exclusive owner of The Meadows Marks, including "THE

MEADOWS" and the  trademarks.

64.    The Meadows Marks, including "THE MEADOWS" and the 

trademarks, are famous and distinctive within the meaning of Section 43(c) of the Lanham

Act, 15 U.S.C. § 1125(c).  Said marks have been in use for many years and play a prominent

role in Plaintiff's marketing, advertising, and the world renowned of its treatment services

across multiple channels of media, communication, and advertising.  The Meadows Marks,

including "THE MEADOWS" and the  trademarks, have this gained

widespread publicity and public recognition in the State of Arizona and elsewhere.  To

enhance its rights, Plaintiff procured federal registrations for The Meadows Marks, including

"THE MEADOWS" and the  trademarks.

65.     Defendants' use of the Meadows Marks, including "THE MEADOWS" and the **MEADOWS** trademarks, consitutes use in commerce that has not been licensed or otherwsie authorizde by Plaintiff.  Consumers are therefore likely to locate and procure services of the Defendants with the erroneous belief that they are associated with, sponsored by, or affilaited with the Plaintiff.  The Defendants' use of The Meadows Marks will therefore dilute and/or be likely to dilute the distinctive quality of those marks and to lessen the capacity of such marks to identify and distinguish Plaintiff's service offerings by way of blurring.

66.     Defendants had either actual notice or constructive notice of The Meadows Marks pursuant to 15 U.S.C. § 1072 prior to their adoption, use, and sale of the infringing services.

67.     Defendants actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with The Meadows Marks, thus entitling The Meadows to injunctive relief and to recover Defendants profits, actual damages, enhanced profits and damages, costs, and attorneys' fees pursuant to 15 U.S.C §§ 1114, 1116, and 1117.

### COUNT FOUR

### UNFAIR COMPETITION

### UNDER ARIZONA COMMON LAW

68.     The Meadows re-alleges and incorporates by references the allegations in the proceeding paragraphs as if fully set forth herein.

69.     The Meadows Marks are, and have been since prior to Defendants' aforementioned acts, distinctive and famous as a result of, among other things, The Meadows' lengthy and extensive use and promotion of The Meadows Marks.  Defendants' aforementioned unauthorized acts and use of The Meadows Marks has and will continue to

22

have an adverse effect upon the value and distinctive quality of The Meadows Marks. Defendants' actions are likely to cause confusion, cause mistake, or deceive a person about the origins, sponsorship, or approval of the services by The Meadows.

70.     Defendants' aforementioned actions constitute willful and intentional infringement of The Meadows' right in The Meadows Marks under at least Section 44-1451 of the Arizona Revised Statutes and therefore unfair competition under the Arizona common law.

71.     Defendant's actions have caused and, unless enjoined by this Court, will continue to cause, serious and irreparable injury and damage to The Meadows, for which The Meadows has no adequate remedy at law.

72.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with The Meadows' Marks thus entitling The Meadows to injunctive relief and to recover Defendant's profits, actual damages, and enhanced profits and damages.

## **REQUEST FOR RELIEF**

WHEREFORE, for all of the foregoing reasons, The Meadows prays for judgement as follows:

A.     For judgment in favor of The Meadows on each of its claims against Defendants;

B.     That Defendants are infringing, have infringed, have contributed to, and continue to infringe each of The Meadows Marks;

C.      That Defendant's actions constitute trademark infringement, unfair competition, false designation of origin, and trademark dilutions under the relevant federal and state statutes and common law;

D.     That such infringement of The Meadows Marks has been willful and deliberate;

E.     Issue such orders as necessary to enjoin Defendants, its affiliates, subsidiaries, officers, directors, employees, agents, licensees, successors, and assigns and all persons in concert with them from further infringing The Meadows Marks;

1       F.      Award The Meadows all damages, with interest, that The Meadows has

2 sustained in consequence of Defendants' infringement of The Meadows Marks;

3       G.      Award The Meadows all profits obtained by Defendants as a consequence of

4 their use and infringement of The Meadows Marks;

5       H.      Award The Meadows its costs and reasonable attorneys' fees; and

6       I.      Award all such other and further relief as the Court deems just and proper.

7 <center>**JURY DEMAND**</center>

8 Plaintiff demands a trial by jury on all of its claims.

9 DATED this 6th day of April 2020.

10 <div align="center">**POLSINELLI PC**</div>

11

12           By:_____*s/ Jennifer J. Axel*_____

13               Jennifer J. Axel

              One East Washington Street, Suite 1200

14               Phoenix, Arizona 85004

15

16               Colby B. Springer

              Miya Yusa

17               3 Embarcadero Center, Suite 2400

              San Francisco, CA  94111

18

19               *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

<center>24</center>

1
2
3
4

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2020, I electronically filed the foregoing with the Clerk of the Court and electronically served a copy of the same upon all parties by using the CM/ECF system.

_s/ Jennifer J. Axel_

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28